UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANNE M. (LYON) LaHODNY and TERRY
A. LaHODNY

6:13-cv-2102-TC

Plaintiff,    FINDINGS & RECOMMENDATION

v.

48 HOURS, CBS NEWS and TROY
ROBERTS,

Defendants.

COFFIN, Magistrate Judge:

Plaintiff Jeanne LaHodny initially brought this action on November 26, 2012 alleging that

the CBS News show 48 hours aired an episode in November of 2012 that defamed her, invaded her

privacy and cast her in a false light. The court dismissed the complaint for failure to state a claim.

On January 17, 2014, plaintiff amended the complaint, dropped numerous defendants and added

Terry LaHodny as a plaintiff. Plaintiffs allege defamation, invasion of privacy, interference with

business relations, negligence, infliction of severe emotional distress, and public disclosure of private

facts.

Page 1 - FINDINGS & RECOMMENDATION

The remaining defendants, 48 Hours, CBS News and Troy Roberts, move to strike all of plaintiffs' claims pursuant to Oregon's anti-SLAPP statute, ORS § 31.150.

On November 24, 2012, the nationally broadcast episode of 48 hours reported on the investigation and prosecution of Frank O'Connell for the 1984 murder of Jay French. The program also reported on the subsequent collateral attack that successfully overturned the conviction nearly 30 years later in 2012. The program presented interviews with family members and others involved in the legal proceedings as well as information from case files.

The initial investigation and prosecution of the murder focused on the theory that O'Connell shot French to help plaintiff Jeanne LaHODNY, French's ex-wife, win a custody battle. In this regard, there were suggestions of a romantic link between O'Connell and Jeanne LaHodny. Indeed, following a bench trial, the court found that a continuing relationship with Jeanne LaHODNY provided O'Connell the motive for murder. The court also noted French's wife's testimony that he told her, as he was dying, that he felt that Jeanne LaHODNY had something to do with the attack.

A few years after the conviction, O'Connell's son began his own investigation and later persuaded Centurion Ministries to investigate. These investigations led to the discovery of exculpatory evidence in the police case file including evidence suggesting plaintiff Jeanne LaHODNY had been involved in an attempt to run French of the road. The investigation also led to evidence undercutting eyewitness testimony.        O'Connell then filed a petition for habeas relief and the Los Angeles Superior Court granted the petition. Much of the allegedly defamatory statements of which plaintiff Jeanne LaHODNY complains are stated in the court's order granting relief. See, e.g., Exhibit 3 to Declaration of Al Briganti (#34) at p. 6.

It is apparent that the statements giving rise to plaintiffs' claims come under the rubric of

Page 2 - FINDINGS & RECOMMENDATION

Oregon's Ant-SLAPP statute.  See, e.g., ORS § 31.150(2)(b) (statements in connection with issue under consideration by a judicial body; § 31.150(2)(c) (statements presented in a public forum in connection with an issue of public interest).  However, the court need not resort to a review of the evidence supporting a prima facie case[1] for each of plaintiff's claims as the complaint may be dismissed under the standards related to an ordinary motion to dismiss.

As noted, the court has previously informed plaintiff of basic pleading requirements and permitted plaintiff a chance to cure pleading deficiencies.  Nonetheless, the current complaint fails to state a cognizable claim for relief.  In determining the sufficiency of a pro se complaint, the court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520–21 (1972).  The court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  A complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure, as explained in the Supreme Court's decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  However,

> [w]hile a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to

---

[1]Oregon's ant-SLAPP statute allows defendants to challenge actions like this at an early stage essentially moving straight to a summary judgment like motion requiring plaintiff to present substantial evidence supporting a prima facie case showing a probability that plaintiff will prevail. Staten v. Steel, 222 Or.App. 17, 27-29 (2008).

raise a right to relief above the speculative level....

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007) (citations omitted). Moreover, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions-which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted-and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. at 678 (2009). In short, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id.

Plaintiffs' amended complaint alleges six causes of action: (1) invasion of privacy and intrusion upon seclusion; (2) defamation, libel and slander; (3) interference with business relations and business reputation; (4) negligence; (5) intentional or negligent infliction emotional distress; and (6) public disclosure of private facts.


A.    Defamation

A liberal reading of the complaint makes clear that plaintiffs' defamation based claims must be dismissed as time-barred. Plaintiff Jeanne LaHODNY filed the initial complaint on November 26, 2013 alleging that on November 26, 2012, she "was advised ... that 48 hours **had** aired a show which involved" her. Complaint (#3) at p. 4 (emphasis added). The amended complaint also alleges that plaintiffs were advised on November 26, 2012 that the show had aired. Public press releases show that CBS broadcast the show nationally on November 24, 2012. See, e.g., CBS News Press Release dated November 19, 2012 (Presumed Guilty, to be broadcast Nov. 24, 2012 on the CBS Television Network.); http://www.cbspressexpress.com/cbs-news/releases/view?id=33697. The

court takes judicial notice that the program at issue aired November 24, 2012. See Fed.R.Evid. 201

(allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ...

capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably

be questioned"); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (noting that courts

ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take

judicial notice").

The statute of limitations for a defamation claim is one year.  ORS § 12.120(2).  Moreover,

the discovery rule cannot be used to toll the statute of limitations in this case given the very public

and inherently discoverable nature of the alleged defamatory statements.   As Judge Haggerty

explained in deParrie v. Hanzo, 2000 WL 900485, at *4 (D.Or. 2000):

> Suits for defamation must be brought within the one-year limitation period of ORS
> 12.120(2). The "discovery rule," which would toll the statute of limitations until the
> subject of the alleged defamation knew or should have known of the potential claim,
> is inapplicable to suits for defamation which are alleged to have occurred in a public
> forum. See Workman v. Rajneesh Foundation Intern., 84 Or.App. 226, 229, 733 P.2d
> 908, 910, review denied, 300 Or. 700 (1987) (discovery rule does not extend to
> defamations that are expressed in open or public forums or media).

See also, Cole v. Sunnyside Marketplace, LLC, 212 Or.App. 509, 519 (2007) (discovery rule

application will not toll inherently discoverable information giving rise to cause of action).  Indeed,

the amended complaint makes clear that plaintiffs discovered the allegedly defamatory statements

very soon after the initial broadcast. Accordingly, plaintiffs' defamation claim should be dismissed.[2]

---

[2]Plaintiffs' argument that the statute of limitations may be tolled in the event their counsel
dies before filing a claim, ORS § 12.195, also lacks merit.  Their purported counsel ultimately
declined to take the case and did not die.

B.    Invasion of Privacy

Plaintiffs allege that defendants filmed their home "which is an old west ghost town **attraction** situated on a historic 'old wagon' road and a scenic byway due to its history." Amended Complaint (#10) at p. 4 (emphasis added). Plaintiffs further allege that Terry LaHODNY has been continuously building this old west town which is open to the public that has been on Roadside America since 2007 and people have come from as far away as Australia. Id. Plaintiffs also allege that there have been several commercial photo shoots at the property. Id.

It is unclear how the defendants invaded plaintiffs' privacy, but they do allege that they are responsible for filming their home and even mailbox which has their names and address on it. The complaint does make clear that the public has been encouraged and invited to visit at any rate. It appears that plaintiffs complain not about an invasion of privacy (allegedly accomplished by the publication of public facts and calling the property a "compound") but about the negative reaction to the alleged defamatory statements about them. See, e.g., id. ("Defendants have intentionally invaded our privacy and described our home as 'an odd shaped compound' and further state 'Jeanne rarely leaves the property' and is in hiding ... just to incite public opinion against plaintiffs."). However, the tort of invasion of privacy generally protects the right to be let alone. Humphers v. First Interstate Bank, 298 Or. 706, 714 (1985). The complaint makes clear that plaintiff desires public attention in order to sustain their old west town attraction, but that they don't want the attention garnered by the alleged false statements, which is more appropriately alleged as a defamation claim.

To establish a claim for invasion of privacy, plaintiffs must prove three elements: (1) an intentional intrusion, physical or otherwise; (2) upon the plaintiffs' solitude, seclusion, private affairs

Page 6 - FINDINGS & RECOMMENDATION

or concerns; (3) which would be highly offensive to a reasonable person.  Mauri v. Smith, 324 Or.

476, 483 (1996).

> A person intrudes by thrusting himself or herself in without invitation, permission, or welcome. A person acts intentionally when he or she either desires to cause the consequence of an act or believes that the consequence is substantially certain to result from the act. By definition, then, an actor commits an intentional intrusion if the actor either desires to cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain to result from committing the invasive act in question.

Id. at 484.

There is no allegation of trespass.  Although plaintiffs belatedly assert in response that the

show also depicted their home from their driveway, even if this could support an intrusion, it is not

plausible that the outside of plaintiffs' home or driveway is a secluded place given the allegations

of the public attraction run by plaintiffs.  Nor could it be considered highly offensive.  See. e.g.,

McLain v. Boise Cascade Corp., 271 Or. 549, 556 (1975) (Trespass alone cannot automatically

change an otherwise reasonable surveillance into an unreasonable one).

Plaintiffs also offer the additional allegation that defendants "had personal private pictures

of inside plaintiffs' home with plaintiff holding her granddaughter, and another of the plaintiffs

together, on plaintiff's birthday." Response (#44) at p. 14.  However, there is no suggestion that any

of the defendants intruded into plaintiffs' home and took the pictures.  Accordingly, plaintiff's

intrusion upon seclusion claim should be dismissed.


C.    Interference with Business Relations

To allege this claim, plaintiffs must plead

"(1) the existence of a valid business relationship or expectancy, (2) intentional

Page 7 - FINDINGS & RECOMMENDATION

interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to economic relations, and (6) damages."

Uptown Heights Associates v. Seafirst Corp., 320 Or. 638, 651, 891 P.2d 639 (1995).

Plaintiffs do not allege what valid business relationship they expected, but only allege a decrease in people visiting their attraction since Presumed Innocent aired. There is no allegation that defendants knew of any current or prospective business relations. Morever, the show depicted news of public interest concerning judicial proceedings and investigation of a murder. There is no plausible allegation that defendants accomplished this reporting through an improper means in light of the fact that the information came from police files, witnesses, and the judicial record.[3] Regardless of whether plaintiffs believe that statements made by the participants involved in the investigation were false, a news report of those statements made in public proceedings or gathered by public entities is not improper. While plaintiff believes that the program paints her as a participant in the murder, the show only presents the evidence in the case and investigation, it does not draw a conclusion as to her role. Accordingly, this claim should be dismissed.


D.    Negligence

Plaintiffs may not maintain an action for negligence based on defamation. See Coe v. Statesman-Journal Co., 277 Or. 117, 120 (1977) ("An action to secure damages for an injury in a situation of this kind is an action for defamation, regardless of whether the publication was intentionally, negligently, or inadvertently made."). Accordingly, this claim should be dismissed.

---

[3]The statement that plaintiffs property is an odd compound does not appear to be part of the public record, but is not defamatory as it is merely an opinion.

Page 8 - FINDINGS & RECOMMENDATION

E.    Infliction of Emotional Distress

The tort of intentional infliction of emotional distress requires plaintiff to plead and prove that defendants' acts were an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenruas, 321 Or. 532, 543 (1995). There are no allegations in the complaint that come even remotely close to such standard. Cf. Hall v. The May Dept. Stores, 292 Or. 131, 139 (1981), abrogated on other grounds by McGanty, 321 Or. 532 (the tort requires the kind of aggravated acts of persecution that a jury could find beyond all tolerable bounds of civilized behavior). In addition, negligent infliction of emotional distress requires either physical injury, Lowe v. Philip Morris USA, Inc., 207 Or.App. 532, 551 (2006), or emotional distress that was caused by violation of some duty over and above the duty to avoid foreseeable risk of harm such as a duty arising from a special relationship. Hammond v. Central Lane Communications Center, 312 Or. 17, 22–23 (1991). Plaintiffs do not allege emotional distress resulting from physical injury, rather the complaint alleges physical injury resulting from emotional distress. Accordingly, this claim should be dismissed.


F.    Public Disclosure of Private Facts

As noted above, plaintiff's property is generally open to the public. Plaintiffs do allege publication of photos of plaintiff Jeanne LaHODNY and her alleged granddaughter,[4] but there are no allegations of wrongfulness beyond the publication itself. Not every disclosure of a private fact will give rise to a claim in tort.

"[I]n Oregon the truthful representation of facts concerning a person, even facts that

_____

[4]In the broadcast, the face of the child is blurred.

a reasonable person would wish to keep private and that are not 'newsworthy,' does not give rise to common-law tort liability for damages for mental or emotional distress, unless the manner or purpose of defendant's conduct is wrongful in some respect apart from causing the plaintiff's hurt feelings."

Anderson v. Fisher Broadcasting Companies, Inc., 300 Or. 452, 469, 712 P.2d 803 (1986).

Again, there are no allegations that defendants wrongfully obtained the pictures or that they were aware of some obligation to keep them private. Accordingly, this claim should be dismissed.

Plaintiffs have already been given the opportunity amend and the pleadings, including the response to the motion, make clear that plaintiffs can not present a plausible set of facts to support their causes of action, accordingly the complaint should dismissed without leave to further amend.

G.   Attorney Fees

Defendants seek attorney fees based on Oregon's ant-SLAPP statute. ORS § 31.152(3) (mandatory fees upon prevailing on a special motion to strike). However, as noted above, resort to this statute is unnecessary and the court should decline to award fees.

CONCLUSION

For the reasons stated above, defendants' special motion to strike (#31) should be treated as a motion to dismiss and should be granted. This action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation

within which to file specific written objections with the court. Thereafter, the parties shall have

fourteen (14) days within which to file a response to the objections. Failure to timely file objections

to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right

to de novo consideration of the factual issues and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to this

recommendation.

DATED this 17 day of February 2015.

THOMAS M. COFFIN
United States Magistrate Judge